ENTERED
05/22/2014

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| **HOUSTON REGIONAL SPORTS NETWORK, L.P.** | § | **CASE NO: 13-35998** |
| **Debtor(s)** | § | |
| | § | **CHAPTER 11** |
| | § | |
| **HOUSTON BASEBALL PARTNERS LLC** | § | |
| **Plaintiff(s)** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 13-03325** |
| | § | |
| **COMCAST CORPORATION, *et al*** | § | |
| **Defendant(s)** | § | |

**MEMORANDUM OPINION**

The Court has subject matter jurisdiction over Houston Baseball Partners LLC's claims against Comcast Corporation, NBCUniversal, R. Drayton McLane, Jr. and McLane Champions, LLC for fraud, fraudulent inducement, fraud by nondisclosure, negligent misrepresentation and civil conspiracy. A hearing will be held on whether the Court should remand these claims for reasons other than an absence of subject matter jurisdiction.

The Court has no subject matter jurisdiction over Houston Baseball Partners' claim against McLane Champions, LLC for breach of contract. This claim will be remanded to state court.

**Background**

This background is based on allegations by Houston Baseball Partners LLC in its Original Petition filed in state court.

On May 8, 2003, the Houston Astros and Rocket Ball, Ltd. (the Houston Rockets) formed the Houston Regional Sports Network and licensed their respective media rights to the Network.

ECF No. 1-4 at 11. In 2010, through a competitive bid process, a Comcast affiliate purchased an equity interest in the Network. ECF No. 1-4 at 11. The Network is governed by the Second Amended and Restated Agreement of Limited Partnership of Houston Regional Sports Network, L.P.

The Comcast affiliate and the Network also entered into the Houston Regional Sports Network, L.P. Comcast Network Services Agreement, in which Comcast contracted to provide oversight, service, and support for the Network, including the marketing and sale of the Network's content to other carriers. ECF No. 1-4 at 11.

Both the Limited Partnership Agreement and the Services Agreement contain indemnification provisions which are relevant to the present dispute. The relevant provisions in those agreements are:

> "To the fullest extent permitted by Applicable Law, a Covered Person[1] shall be entitled to indemnification from the Network for any loss, damage or claim incurred by such Covered Person by reason of any act or omission (including any act or omission constituting negligence) performed or omitted by such Covered Person on behalf of the Network in satisfaction of the standards set forth in Section 13.2 and in a manner reasonably believed to be within the scope of authority conferred on such Covered Person by the General Partner or by an appropriate Officer or employee of the General Partner or the Network; provided, however, that no Covered Person shall be entitled to be indemnified in any respect for any loss, damage or claim incurred by such Covered Person by reason of such Covered Person's gross negligence, fraud or willful misconduct with respect to such acts or omissions…"

Second Amended and Restated Agreement of Limited Partnership of Houston Regional Sports Network, L.P., Section 13.4, ECF No. 1-1 at 34.

> "Subject to Section 5.1(c) hereof, Network shall, at its expense, defend, indemnify and hold harmless each Comcast Party from and

[1] The Limited Partnership Agreement defines a Covered Person as a Partner or any of its Affiliates or any of their respective officers, directors, employees, agents, members, Associates or other representatives. Limited Partnership Agreement, Section 13.2, ECF No. 1-1 at 33. The Parties concede that all Defendants are Covered Persons under the Limited Partnership Agreement.

> against any and all damages, liabilities, losses, judgments and costs and expenses (including reasonable attorneys fees) (collectively "**Damages**") incurred by any Comcast Party (i) arising out of any material breach of this Agreement by Network or (ii) in connection with the defense or settlement of all claims, suits, judgments, proceedings or causes of action brought by any other third party (collectively "**Claims**") in which a Comcast Party may be involved or threatened to be involved, as a party or otherwise, solely arising out of a Comcast Party's performance of its obligations under this Agreement, regardless of whether this Agreement continues to be in effect or the Comcast Party continues to a be Comcast Party at the time any such Claims are made or Damages incurred; *provided, however*, that such Claims or Damages did not arise out of the gross negligence, fraud or willful misconduct, as determined by a final, non-appealable court order, of any Comcast Party or any subcontractor of any Comcast Party of a material breach of this Agreement by any Comcast Party."

Houston Regional Sports Network, L.P. Comcast Network Services Agreement, Section 5.1, ECF No. 1-2 at 13.

During the 2010 negotiations , a principal issue was the monthly rate that Comcast would pay the Network to distribute its content to Comcast subscribers, as well as the monthly rate other carriers would be willing to pay for the content. ECF No. 1-4 at 11-12. These rates were determined by geographic subscription zones, with the highest base rate applying to Zone 1. ECF No. 1-4 at 12. With respect to the Network's Affiliation Agreement with Comcast, R. Drayton McLane (the principal of the Astros) and Leslie Alexander (the principal of the Rockets), desired a base rate for Zone 1 that Comcast felt was too high. ECF No. 1-4 at 12. Comcast ultimately agreed to the Zone 1 base rate that the Teams' principals wanted. ECF No. 1-4 at 12. Comcast's acquiescence was premised upon the inclusion of a most favored nation clause. Under that clause, if the Network entered into an affiliation agreement with a subsequent carrier for a lower rate, Comcast would be entitled to reduce its base rates to equal the rate of the subsequent affiliation agreement. ECF No. 1-4 at 12. Comcast revised its business plan for the Network taking into account the newly agreed to Zone 1 base rate. ECF No. 1-4 at 13.

In early 2011, Mr. McLane and McLane Champions, LLC, (collectively the "McLane Entities") began negotiations with Houston Baseball Partners regarding Houston Baseball Partners' purchase of the Astros and the Astros's equity interest in the Network. Part of the offering materials that the McLane Entities provided to Houston Baseball Partners were the Affiliate Revenue Projections and the Comcast Business Plan prepared by Comcast in 2010. ECF No. 1-4 at 14. Several employees of the McLane Entities represented to Houston Baseball Partners that the variables in the offering materials, including the base rates, were proposed by Comcast. ECF No. 1-4 at 14. The McLane Entities further represented that Comcast never failed to achieve the targets set in its business plans, and that Comcast's entrance into the Affiliation Agreement demonstrated the commercial reasonableness of the rates provided in the agreement. ECF No. 1-4 at 14. Pursuant to Houston Baseball Partners's request for additional information, a telephone call between the Parties took place in April, 2011. ECF No. 1-4 at 15. During the call, Jon Litner, the Group President of NBC Sports Group (a Comcast affiliate), told Houston Baseball Partners that the Affiliate Revenue Projections and the Comcast Business Plan were achievable. ECF No. 1-4 at 15. Mr. Litner made these representations on behalf of Comcast and NBCUniversal, in his capacity as an agent of both entities. ECF No. 1-4 at 16. Based on these misrepresentations, Houston Baseball Partners entered into the Purchase and Sale Agreement with the McLane Entities on May 16, 2011. In December, 2012, during a Network partners meeting, Houston Baseball Partners discovered that the Teams' principals insisted on the Zone 1 base rate that formed the basis of the Affiliate Revenue Projections and the Comcast Business Plan. ECF No. 1-4 at 20-21. Houston Baseball Partners paid an artificially inflated purchase price under the Purchase and Sale Agreement because of the Defendants' misrepresentations. ECF No. 1-4 at 21.

On November 21, 2013, Houston Baseball Partners filed this lawsuit in the Harris County District Courts. ECF No. 1-4. Houston Baseball Partners sues for fraud, fraudulent inducement, fraud by nondisclosure, negligent misrepresentation or omission, breach of contract and civil conspiracy. ECF No. 1-4 at 21-38. On November 29, 2013, Comcast filed its Notice of Removal to this Court. ECF No. 1. On March 14, 2014, Houston Baseball Partners filed its Motion for Remand, or Alternatively for Abstention. ECF No. 40. At the hearing held on March 18, 2014, the Court announced that it would first determine whether it has subject matter jurisdiction over the proceedings. Comcast filed its Response to the Motion to Remand, addressing only the issue of the Court's subject matter jurisdiction, on April 7, 2014. ECF No. 64. The McLane Entities filed their Response on April 8, 2014. ECF No. 65. Houston Baseball Partners filed its Reply on April 21, 2014. ECF No. 72. A hearing was held on April 28, 2014.

**Analysis**

Pursuant to 28 U.S.C. § 1452(a), a party may remove a claim or cause of action in a civil action to the district court for the district where such action is pending if the district court has jurisdiction under 28 U.S.C. § 1334. The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper. *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The Court must be satisfied that it has subject matter jurisdiction over each claim asserted by Houston Baseball Partners. *In re Today's Destiny, Inc.*, 05-90080, 2007 WL 2028111 (Bankr. S.D. Tex. July 6, 2007) (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 509, 126 S. Ct. 1235, 1241, 163 L. Ed. 2d 1097 (2006)).

Section 1334(b) provides that district courts have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11. The Parties agree that if the Court has subject matter jurisdiction over these proceedings, it lies in the

Court's related-to jurisdiction. Comcast and the McLane Entities assert that there are two bases for the Court's related to jurisdiction: (1) the contractual indemnification rights that the Defendants have against the Network; and (2) the possibility that a successful outcome for Houston Baseball Partners would diminish the Network's value, thereby affecting the Estate. [2]

In enacting § 1334(b) Congress intended to grant comprehensive jurisdiction to bankruptcy courts allowing them to deal efficiently and expeditiously with all matters connected with a bankruptcy estate. *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S. Ct. 1493, 1499, 131 L. Ed. 2d 403 (1995). The Supreme Court has provided that "related to" bankruptcy proceedings include "(1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate." *Arnold v. Garlock*, 278 F.3d 426, 434 (5th Cir.2001) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n. 5, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995)).

Like most circuits, the Fifth Circuit derives its' related-to jurisprudence from *Pacor v. Higgins*, 743 F.2d 984 (3rd Cir. 1984). *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987). In *Pacor*, the Third Circuit held that, "an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). Accordingly, the Fifth Circuit has stated that a matter is related to a case under title 11 if "the outcome of those proceedings could *conceivably* have any effect on the estate being administered in bankruptcy." *In re Wood*, 825 F.2d at 93. Even when there is a possibility that a suit may ultimately have no effect on the estate, this possibility is not enough to conclude that there would be no *conceivable* effect. *Id.* at 94.

[2] The Court rejects the possibility that a successful (or unsuccessful) outcome for Houston Baseball Partners is a basis for related-to jurisdiction. Because the indemnification provisions provide grounds for related-to jurisdiction, the Court will not discuss this argument.

Although the Parties agree that this is the standard governing related-to jurisdiction, they differ in applying the standard to these facts.

There is some dispute amongst courts regarding the meaning of *Pacor* and its progeny. In *Pacor*, the defendant, Pacor, did not have a contractual right to indemnification and would have had to bring entirely separate proceedings to receive indemnification from the debtor, Johns-Manville. *Pacor v. Higgins*, 743 F.2d at 995. The court found that there was no related-to jurisdiction because the dispute between the third parties was at best a precursor to a potential third party claim by Pacor against Johns-Manville. *Id*. Because Johns-Manville would not be automatically liable to Pacor, the court found that there was no related-to jurisdiction.

Several subsequent Third Circuit decisions have followed a rigid interpretation of *Pacor*. As one court has stated, the recently reaffirmed precedent of *Pacor* dictates that a bankruptcy court lacks subject matter jurisdiction over a third-party action if the third-party action will only impact the estate through intervention of another lawsuit. *In re Lower Bucks Hosp.*, 488 B.R. 303, 314 (E.D. Pa. 2013). In distinguishing between common law and contractual indemnification, the Third Circuit clarified that it did not intend to imply that contractual indemnity rights alone are sufficient for related-to jurisdiction—that determination must be developed on a fact-specific, case-by-case basis. *Id*.

Other courts have applied *Pacor* more liberally holding that when there is automatic liability (e.g. when an obligation to indemnify is contractual and absolute), the third party litigation is related to the bankruptcy case. *See e.g. In re Masterwear Corp.*, 241 B.R. 511, 516 (Bankr. S.D.N.Y. 1999). The *Masterwear* court also held that related-to jurisdiction may exist if a disputed or conditional indemnity claim has a reasonable legal basis. *Id*; *see also In re*

*WorldCom, Inc. Securities Litigation*, 293 B.R. 308, 318-20 (S.D.N.Y. 2003) (rejected rigid reading of *Pacor* and held that in Second Circuit jurisdiction found where reasonable legal basis for indemnification claim).

The indemnification provisions at issue here satisfy both a rigid and expansive reading of *Pacor*. Defendants would not need to file a separate suit in order to be indemnified by the Network. Any contingencies in this case concern whether Defendants' conduct falls within the scope of the Limited Partnership Agreement and the Services Agreement, and which claims (if any) Houston Baseball Partners prevails on in this suit. There is no question that Defendants would have a right to be indemnified for conduct undertaken within the scope of either Agreement that is not excluded by either Agreement's indemnification clause.

The *Union Trust Philadelphia, LLC v. Singer Equip. Co., Inc.* case bears many similarities to the present proceedings. In *Union Trust*, the principals of a chapter 11 debtor were sued in state court and the state court entered a judgment enforcing a settlement among the parties to the state court proceedings. *Union Trust Philadelphia, LLC v. Singer Equip. Co., Inc.*, 460 B.R. 644, 649 (E.D. Pa. 2011). The debtor commenced an adversary proceeding seeking to invoke the automatic stay to enjoin the state court proceedings. *Id*. at 649-50. The debtor alleged that the state court proceedings were related to the bankruptcy because of contractual indemnification provisions that required the debtor to indemnify its principals and because the outcome of the state court proceedings would impact the debtor's value. *Id*. at 654. Singer, the state court plaintiff, argued that the debtor was not, in fact, obligated to indemnify its principals in relation to the state court suit because the conduct alleged there did not arise from the principals' performance of duties for the debtor. On balancing the evidence, the *Union Trust* court determined that whether the debtor was required to indemnify its principals in regards to

the state court proceedings was an open question. *Id*. at 655. The court found the contractual right to indemnification, on its own, to be insufficient to establish related-to jurisdiction. *Id*.

The holding in *Union Trust* applied Third Circuit law. Both principals testified that the indemnification provision required the debtor to indemnify them in connection with the state court proceedings. *Id*. One of the two principals further testified that prior to the bankruptcy filing, the debtor was paying both principals' legal fees in connection with the state court proceedings. *Id*. Under the evidence presented, a court could reasonably find that the state court litigation could conceivably have an effect on the estate. Not only did the debtor's principals affirm such a right to indemnification, but the debtor had already taken steps to indemnify its principals in the litigation. The *Union Trust* court provides no reasoned explanation for why it did not find related-to jurisdiction, and this Court cannot follow the *Union Trust* holding and be faithful to Fifth Circuit precedent.

Despite the differing interpretations of the test for related-to jurisdiction, the standard in the Fifth Circuit is clear. The test for whether proceedings properly invoke federal bankruptcy jurisdiction is whether the outcome of those proceedings could conceivably have any effect on the estate being administered in bankruptcy. Certainty or even likelihood of such an effect is not required. In *In re Canion*, the court held that even proceedings with only a contingent or tangential effect on the estate meets the broad jurisdictional test for related-to jurisdiction. *In re Canion*, 196 F.3d 579, 587 n. 30 (5th Cir. 1999). In *In re El Paso Refinery, LP*, the Fifth Circuit found related-to jurisdiction where a chain of indemnification provisions led directly to the debtor. *In re El Paso Refinery, LP*, 302 F.3d 343, 349 (5th Cir. 2002). The Fifth Circuit held that a third-party suit was related to the debtor's (a refinery owner) estate because the suit was

against former owners of the refinery, and because one former owner could seek indemnification from its successor owner, who could then seek indemnification from the debtor. *Id*.

The Parties agree that the relevant indemnification provisions are governed by Delaware law. Under Delaware law, in order to determine whether an indemnification provision applies, courts follow an "eight corners rule"—i.e. courts must look only to the four corners of the governing documents. *Am. Legacy Found. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 2009 WL 2001324 (D. Del. July 9, 2009) *aff'd sub nom. Am. Legacy Found., RP v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 09-3336, 2010 WL 3960579 (3d Cir. Oct. 12, 2010). When a court is unable to determine from the relevant documents whether an indemnification provision applies, it can rely on extrinsic evidence. *Nicholas v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 83 A.3d 731, 735-36 (Del. 2013). The Parties provided no extrinsic evidence. Accordingly, the Court will rely on the Services Agreement, the Limited Partnership Agreement and the pleadings to determine whether the indemnification provisions are implicated by this dispute.

Houston Baseball Partners alleges that there is no indemnity obligation flowing from the Network to the Defendants. Houston Baseball Partners asserts that the plain language of the Limited Partnership Agreement demonstrates that there is no indemnity obligation because the indemnity only extends to acts or omissions performed or omitted on behalf of the Network and in a manner reasonably believed to be within the scope of authority conferred. ECF No. 41 at 15. Similarly, it argues that the Comcast Services Agreement does not cover Comcast's alleged conduct because it is limited to liability for Comcast's performance of its obligations under the Comcast Services Agreement. ECF No. 41 at 15. Houston Baseball Partners argues that

Defendants' alleged wrongful conducted was not committed on behalf of the Network and therefore Defendants are not entitled to indemnification. ECF No. 41 at 15.

Houston Baseball Partners additionally argues that even if the Defendants' alleged conduct was performed on behalf of the Network or under the Comcast Services Agreement, the indemnification provisions in both agreements exclude gross negligence, fraud and willful misconduct. ECF No. 41 at 16. Because Houston Baseball Partners brings claims for fraud, fraudulent inducement and fraud by nondisclosure, it alleges that the indemnification provisions do not cover the Defendants' conduct.[3] ECF No. 41 at 16.

Comcast asserts that the indemnification provisions would, or at a minimum, conceivably could entitle Comcast to indemnification from the Network. ECF No. 64 at 6. Comcast asserts that the sole factual allegation underpinning Houston Baseball Partners' claims against Comcast are that Mr. Litner made certain statements to Houston Baseball Partners' representatives during an April 2011 telephone call concerning assumptions in the Network's business plan. ECF No. 64 at 6. Comcast asserts that this conduct would fall within the scope of the indemnification provisions of the Limited Partnership Agreement and the Services Agreement. To support this assertion Comcast points to Section 2.1 of the Services Agreement in which Comcast provides Network management oversight and certain enumerated operations services. ECF No. 64 at 6. Comcast argues that the information Mr. Litner provided in the call falls within the scope of his duties under the Services Agreement. ECF No. 64 at 6.

Because the Services Agreement provides indemnification for acts taken within the scope of the Services Agreement, the indemnification provisions may apply. Accordingly, there is a conceivable effect on the Estate.

---

[3] *See e.g. In re Masterwear Corp.*, 241 B.R. at 516 (Bankr. S.D.N.Y. 1999) (citing *Wall v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 1992 WL 77625, at *2 (S.D.N.Y. Mar. 26, 1992)) (no jurisdiction over third party action where indemnification agreement specifically excepted fraud and breach of fiduciary duty alleged in complaint).

At the April 28, 2014 hearing, counsel for the McLane Entities pointed to contentions in Houston Baseball Partners' state court petition where Houston Baseball Partners asserted that Mr. McLane and Mr. Alexander demanded the Zone 1 base rates that were subsequently incorporated into the Network's Business Plan.  Hearing Transcript, ECF No. 78 at 40.  Counsel argued that Mr. McLane was acting on behalf of the Network when negotiating the base rate with Comcast.  Hearing Transcript, ECF No. 78 at 40.  Because the allegedly inflated rates were negotiated by Mr. McLane on behalf of the Network, and because the rates serve as the basis for Houston Baseball Partner's claims, the McLane Entities argue that the Network might have to indemnify them.  As counsel further asserts, these factual allegations were incorporated into each of Houston Baseball Partners' causes of action.  Hearing Transcript, ECF No. 78 at 39.

Most of the causes of action alleged in the state court petition would be excluded from the indemnification provisions in the Services Agreement and the Limited Partnership Agreement.  However, Houston Baseball Partners asserts a claim for negligent misrepresentation or omission by all Defendants.  ECF No. 1-4 at 29.  The Texas Supreme Court has embraced the Restatement (Second) of Torts § 552(2)(a) approach to defining negligent misrepresentation.  *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 920 (Tex. 2010).  Under the Restatement:

> "[O]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

*Id*.

The Limited Partnership Agreement and the Services Agreement enumerate acts that are excluded from indemnification—gross negligence, fraud or willful misconduct. Negligent misrepresentation is distinct from fraud and does not require intent to deceive. *Id*. at 921. If Defendants are liable for negligent misrepresentation, they are entitled to be indemnified for this conduct under the Services Agreement and Limited Partnership Agreement.

The claim for negligent misrepresentation, like all the others, incorporates the facts discussed throughout the Original Petition. If Houston Baseball Partners were to prevail on its negligent misrepresentation claim, it is conceivable that the Network would be required to indemnify the McLane Entities for any loss.[4] Houston Baseball Partners' claims for fraud, fraudulent inducement, fraud by nondisclosure, negligent misrepresentation and civil conspiracy have at least a conceivable effect on the Estate because the Network will potentially be liable based on the outcome in each cause of action. Failure on the fraud, fraudulent inducement, fraud by nondisclosure and civil conspiracy claims, but success on the negligent misrepresentation claim, would result in indemnification by the Network. Determining related-to jurisdiction does not require certainty, but rather a finding of any conceivable effect. Contingent or tangential effects may be sufficient in the Fifth Circuit to establish related-to jurisdiction. *In re Canion*, 196 F.3d at 587 n. 30. Under this broad jurisdictional test, the Court finds that it has subject matter jurisdiction over these causes of action.

The Court does not have subject matter jurisdiction over Houston Baseball Partners' claim against McLane Champions for breach of contract. Houston Baseball Partners alleges that McLane Champions breached representations, warranties and covenants in the Purchase Agreement resulting in damage to Houston Baseball Partners. ECF No. 1-4 at 33. This claim

---

[4] Even if only the McLane Entities are indemnified for their conduct, this is sufficient for related to jurisdiction. Houston Baseball Partners has filed one complaint against the Defendants seeking liability for their joint conduct, and success against any of them will have a potential effect on the Estate. *See In re Wood*, 825 F.2d at 94.

has no conceivable effect on the Estate.  McLane Champions was not acting on behalf of the Network when it entered into the Purchase Agreement with Houston Baseball Partners.  The Network cannot be required to indemnify McLane Champions for any breach of this agreement.  This cause of action will be remanded to state court.  The Court will make a determination on whether to remand the other causes of action based on factors other than an absence of subject matter jurisdiction.

## Conclusion

The Court will enter an order consistent with this Memorandum Opinion.

SIGNED **May 22, 2014.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE